UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


JOHN MITCHELL,
on behalf of himself and a
Class of persons similarly situated                                    PLAINTIFFS


v.                                                                NO. 3:13-CV-498-CRS


GENERAL MOTORS LLC                                                  DEFENDANT


## <u>**MEMORANDUM OPINION**</u>

This matter is before the court on the motion of the defendant, General Motors LLC

("GM"), to dismiss the First Amended Complaint of the plaintiff, John Mitchell ("Plaintiff").

(DN 20). Plaintiff filed a response to the motion (DN 21), to which GM replied (DN 22). For

the reasons set forth herein, we will grant GM's motion to dismiss (DN 20).

## I. BACKGROUND

On or about April 28, 2011, Plaintiff purchased a 2011 Chevrolet Cruze from Bachman

Chevrolet in Louisville, Kentucky for approximately $21,000. GM[1] is the manufacturer of the

Chevrolet Cruze (hereinafter, "the Cruze" or "the vehicle"). The Cruze was sold pursuant to a

written warranty provided by GM, in which GM warranted and represented that it would make

any repairs necessary to correct defects in material or workmanship in the vehicle for three years

or 36,000 miles (the "Warranty"). The Warranty states that it "covers repairs to correct any

vehicle defect related to materials or workmanship occurring during the warranty period," and

any warranty repairs will be made at no charge. (Mot. to Dismiss, DN 20-5, p. 10).

---

[1] The First Amended Complaint misidentified the defendant as General Motors Co. This court substituted General
Motors LLC as the proper party by agreed order on August 12, 2013, and we dismissed with prejudice all claims
against General Motors Co. (DN 19).

Plaintiff contends that in October 2012, the vehicle began to exhibit signs of a mechanical defect that allegedly caused antifreeze to leak from the radiator (hereinafter, "the alleged defect" or "the defect").  According to Plaintiff, the alleged defect causes mechanical problems and creates a "malodorous" smell that reaches the passenger compartment.  Plaintiff alleges that he took the vehicle to Bachman Chevrolet for repair on five separate occasions after it purportedly began to exhibit signs of the alleged defect.  Bachman was unable to repair the alleged defect, and Plaintiff does not assert that he was charged for any of these repair attempts.  Plaintiff maintains that he alerted GM of the alleged defect by notifying Bachman Chevrolet, whom Plaintiff contends is an agent of GM.

The First Amended Complaint describes several alleged conversations between Plaintiff and representatives of Bachman Chevrolet regarding their purported denial—and subsequent acknowledgment—of the defect, and their apparently fruitless attempts to repair it.  Most of Plaintiff's communications regarding the alleged defect were made with Bachman representatives; Plaintiff only communicated telephonically with GM employees via GM's toll free number.  According to Plaintiff, Bachman representatives "admitted" that another Cruze owner had complained of the same defect experienced by Plaintiff and recommended that he trade in the Cruze for a new GM model.  One representative allegedly loaned Plaintiff another vehicle because he did not "feel comfortable" with Plaintiff driving the Cruze.  In April 2013, while the vehicle was still under the Warranty, Plaintiff traded it in for a new GM vehicle.  GM gave Plaintiff a $3,000 trade–in–credit on the new vehicle.

Plaintiff also argues that GM was aware of the alleged defect and issued at least two Service Bulletins designed to cure it.  Plaintiff contends that GM, despite being aware of the

defects with the Cruzes, "concealed the existence of this Antifreeze Leakage Defect and promised consumers that any known defects had been corrected."  (DN 15, ¶ 12).

Plaintiff filed this lawsuit as a putative class action on May 16, 2013, and subsequently amended the complaint to include additional factual allegations to support his claims.  In the First Amended Complaint, Plaintiff invokes this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(d).  Plaintiff brings several claims for relief on behalf of a purported nationwide class, defined as all individuals and entities that allegedly purchased or leased a model year 2011 or newer Chevrolet Cruze.  Plaintiff seeks to recover compensatory, punitive, and treble damages from GM for the following claims: (1) violation of the Kentucky Consumer Protection Act, KRS §§ 367.110 *et seq*. ("KCPA") (Count I); (2) violations of state unfair trade practice laws (on behalf of the state subclasses) (Count II); (3) breach of implied warranties of merchantability (Count III); (4) breach of express warranty (Count IV); (5) violation of the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*. (Count V); (6) breach of contract/common law warranty (Count VI); (7) fraudulent concealment (Count VII); (8) unjust enrichment (Count VII); (9) declaratory judgment, KRS § 418.040 (Count VIII); and (10) unconscionability (Count IX).  In addition, Plaintiff asks that the court issue an injunction requiring GM to repair the alleged defect and recall all of the Cruzes that are subject to this litigation.

This matter is before the court on GM's motion to dismiss the First Amended Complaint. Because this is a putative class action, Plaintiff must show that he has personally been injured. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal marks and quotations omitted) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *see also J & R Mktg., SEP v. Gen. Motors Corp.*, 549

F.3d 384, 390 (6th Cir. 2008) ("If it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper."). For the purposes of this motion, we will evaluate whether Plaintiff's claims can survive GM's motion to dismiss.

## II. CHOICE OF LAW

Neither party explicitly specifies which state's law applies to this dispute, but both parties cite to Kentucky law. Moreover, the Cruze that is the subject of this suit was purchased in Kentucky, the warranty was entered into in Kentucky, and the alleged defect arose in Kentucky. Courts interpret both parties' citations to the law of one state as indicative of the parties' consent to the forum state's law. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010); *accord Leininger v. Reliastar Life Ins. Co.*, 2007 WL 2875283, *7 (E.D. Mich. Sept. 28, 2007). Therefore, we will apply Kentucky law.

## III. STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claims showing that the pleader is entitled to relief. The pleading standard in Rule 8(a)(2) does not require detailed factual allegations, but "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is not enough that the complaint contains "facts that are merely consistent with a defendant's liability;" rather, a plaintiff must allege "facts—not legal conclusions or bald assertions—supporting a 'plausible' claim for relief." *Id.* at 687 (quoting *Twombly*, 550 U.S. at 557)). A complaint that offers legal conclusions or a recitation of the elements of a cause of action will not meet this pleading standard. *See id.* "[C]onclusory allegations or legal conclusions masquerading as

factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The court must take all of the factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief. *Id.* at 677–78.

As a general rule, a district court may not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007) (unpublished); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). However, "when a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (quotation omitted). If a motion to dismiss is converted to a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Claims of fraud are subject to heightened pleading requirements under Rule 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's

mind may be alleged generally.").  To satisfy Rule 9(b)'s specificity requirements, a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)).  Rule 9(b) requires that the circumstances of the fraud, and not the evidence of the case, be pleaded with particularity.  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988).  The rule may be relaxed when there has been a lack of discovery and the opposing party exclusively holds the information needed for a plaintiff to achieve particularity.  The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading.  *Id.* at 679; *Coffey v. Foamex, L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

## IV. DISCUSSION

### A.  Count I: Violation of the Kentucky Consumer Protection Act

In Count I of the First Amended Complaint, Plaintiff claims that GM violated the KCPA by misrepresenting the Cruze's safety and reliability "with the intent that Plaintiff and the proposed Class members rely on such representations in the deciding [*sic*] whether to purchase or lease the Chevrolet Cruze."  (DN 15, ¶ 60).  To maintain a claim for violation of the KCPA, Plaintiff must allege that GM engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," KRS § 367.170(1), and that such practices caused Plaintiff's harm.  *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 698 (W.D. Ky. 2010).  A person bringing a claim under KRS § 367.170 must file the action within two years after the violation.  KRS § 367.220(5).

GM first argues that this count must be dismissed because Plaintiff's claim is time barred under KRS § 367.220(5). GM maintains that Plaintiff's claim accrued in April 2011—when Plaintiff purchased the vehicle—because that is the time at which GM made the alleged misrepresentations and omissions that serve as the basis of Plaintiff's KCPA claim. According to GM, the statute of limitations in this action expired in April 2013, two years after the April 2011 purchase, but Plaintiff did not file this action until May 16, 2013. In response, Plaintiff argues that his claim against GM for violation of the KCPA did not accrue until he suffered an "ascertainable loss." Plaintiff contends that this loss did not occur until he noticed the alleged defect in October 2012. Accordingly, Plaintiff argues that he filed his claim within the applicable limitations period.

We find that Plaintiff's KCPA claim accrued in April 2011 when he purchased the vehicle. In reaching this conclusion, we consider the specific allegations in Plaintiff's First Amended Complaint. In Count I, Plaintiff alleges that his injury occurred when GM misrepresented the Cruze's safety and reliability with the intent that Plaintiff would rely on these representations in purchasing the vehicle.[2] (DN 15, ¶ 60). Because Plaintiff relied on these purported misrepresentations when he made the decision to purchase the vehicle in April 2011, he had to bring any KCPA claim based on these representations by April 2013.

GM further argues that neither the discovery rule nor the fraudulent concealment doctrine toll the statute of limitations in this instance and, as such, Plaintiff's KCPA claim must be dismissed because it was brought after the expiration of the limitations period. Plaintiff contests

---

[2] Plaintiff also alleges that GM further "perpetuated its unfair and deceptive conduct . . . by denying the existence of the [alleged defect] every time Plaintiff . . . complained of the problem . . . ." (DN 15, ¶ 62). Although these allegedly deceptive practices likely occurred after the April 2011 purchase, the complaint seems to classify these practices as additional evidence supporting Plaintiff's claim for violation of the KCPA.

GM's assertion that the discovery rule does not toll the running of the limitations period in this action. In Plaintiff's view, Kentucky law encourages a broad application of the discovery rule.

This court has held that "the discovery rule does not apply to the KCPA because it is a legislatively enacted cause of action." *Bennett v. Ford Motor Co.*, 2008 WL 920745, *3 (W.D. Ky. Apr. 3, 2008) (citing *Cook v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2011375, *3-4 (Ky. Ct. App. Sept. 10, 2004); *Hathaway v. Cont'l Assurance Co.*, 2006 WL 83436, *3 (W.D. Ky. Jan. 10, 2006)); *see Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 701 (W.D. Ky. 2013)). Moreover, this court has also held that "the fraudulent concealment doctrine does not apply to causes of action arising under the KCPA." *Hathaway*, 2006 WL 83436, at *3 ("The KCPA is a purely statutory creation, and there is no reason to believe that the Kentucky legislature intended the fraudulent concealment doctrine to apply to it."). As such, we find that neither the discovery rule nor the fraudulent concealment doctrine toll the statute of limitations in this action.

As we have determined that Plaintiff's claim for violation of the KCPA is time barred, we need not address GM's argument that Plaintiff did not plead the claim with particularity under Rule 9(b). Therefore, we find that Plaintiff cannot maintain a claim for violation of the KCPA.

**B. Count II: Violations of State Unfair Trade Practice Laws**

GM seeks to dismiss Count II on the basis that Plaintiff lacks standing to sue for the alleged violations of other states' consumer protection statutes. GM further argues that the First Amended Complaint fails to provide basic information about the causes of action in this count, including information about the other states' consumer protection statutes, what conduct these statutes prohibit, and how GM allegedly violated these statutes. Plaintiff contends that it is

premature to dismiss this count, and he argues that the court should postpone its ruling on the validity of this claim until the class certification stage.

The U.S. District Court for the Eastern District of Missouri addressed similar claims in a multidistrict product liability action brought against car manufacturers for allegedly designing a defective anti-lock brake system. *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liability Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997). The defendant manufacturers sought to dismiss the plaintiffs' claim for violations of various state consumer protection statutes. *Id.* at 1529. In granting the defendants' motion to dismiss that count, the court held that

> The pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes. *See FDIC v. Bathgate*, 27 F.3d 850, 876 (3rd Cir. 1994); *See also NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 692 F.Supp. 327, 330 (S.D.N.Y. 1988) (holding requirements of Rule 9(b) apply to state based deceptive trade practices claims because Rule 9(b) is a procedural rule). Plaintiffs have failed to plead these claims with the specificity required by Fed. R. Civ. P. 9(b). Each state's statute is unique and plaintiffs are required to plead the essential elements of each one. Plaintiffs have completely failed to do so.

*Id.* at 1536.

In the instant action, Plaintiff does not plead the essential elements of each state consumer fraud statute on which he intends to rely. Count II of the First Amended Complaint only states that "[t]he allegations in this Count are, for all non-Kentucky citizens, pleaded in the alternative to the allegations in Count I," and that Count II "is asserted on behalf of the members of each State Subclass under their respective consumer protection statutes." (DN 15, ¶¶ 70–71). We find that these bare allegations do not satisfy Rule 9(b)'s specificity requirement. Therefore, we will grant GM's motion to dismiss the claim for violation of other states' unfair trade practice laws.

### C. Count III: Breach of Implied Warranties of Merchantability

Kentucky recognizes that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[3] KRS § 355.2–314(1). Goods are considered "merchantable" if they, *inter alia*, "pass without objection in the trade under the contract description" and "are fit for the ordinary purposes for which such goods are used." *Id.* § 355.2–314(2). The First Amended Complaint alleges that GM impliedly warranted that the Cruzes were "of good merchantable quality and fitness—indeed, equal to or better than the more expensive and/or foreign competition—and were safe for their ordinary intended use." (DN 15, ¶ 74). Plaintiff maintains that GM breached this implied warranty when it manufactured, distributed, and/or sold Cruzes with the alleged defect. (*Id.* ¶¶ 75–76).

GM seeks dismissal of this count on two grounds. First, GM argues that Plaintiff's claim is barred due to lack of privity. GM contends that plaintiffs can only maintain actions for breach of implied warranty under Kentucky law if they are in privity of contract with the defendant. The Kentucky Court of Appeals addressed this specific issue in *Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237 (Ky. Ct. App. 2007). In that case, the plaintiff purchased sprinklers from Plumbers Supply Company. *Id.* at 238. The sprinklers were manufactured by Globe Fire Sprinklers, Inc. ("Globe"), and were sold pursuant to Globe's one-year limited warranty. *Id.* When the sprinklers malfunctioned, Brown sued Plumbers Supply Company and Globe for, *inter alia*, breach of the implied warranty of merchantability. *Id.* at 239. The Kentucky Court of Appeals held that the trial court did not err in dismissing the plaintiff's claim against Globe for breach of implied warranty because "a plaintiff-buyer asserting a claim based

---

[3] The parties do not dispute that the Kentucky Uniform Commercial Code applies to this action because the transaction in question involved the sale of a vehicle, which qualifies as a "good" under the provisions of the Code. *See* KRS § 355.2–105 (defining "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale").

upon an implied warranty must establish that it enjoyed privity of contract with the defendant-seller against whom the implied warranty claim is asserted." *Id.* at 240 (citing *Compex Int'l Co., Ltd. v. Taylor*, 209 S.W.3d 462 (Ky. 2006)).  The court rejected the plaintiff's argument that "the provisions of KRS 355.2–103 defining 'seller' of goods ought to be broadly construed in order to expand the concept of privity of contract and to encompass within its reach Globe, a manufacturer of goods." *Id.*  The court reasoned that Kentucky's General Assembly has expressly adopted the privity requirement, and the court could not judicially "modify or expand" the legislation requiring privity of contract for claims based on implied warranties. *Id.* at 241.

Similarly, a court in this district applied the Kentucky Court of Appeals' reasoning in *Brown Sprinkler Corp.* and dismissed a claim for breach of the implied warranty of merchantability because the parties were not in a direct buyer–seller relationship.  In *Levin v. Trex Co., Inc.*, 2012 WL 7832713, *1 (W.D. Ky. Mar. 5, 2012), a homeowner purchased decking material manufactured by Trex Co.  After the deck exhibited increased mold and dark spotting, the homeowner brought a claim against Trex Co. for breach of the implied warranty of merchantability. *Id.*  Trex Co. sought dismissal of that claim on the ground that the parties were not in privity of contract. *Id.*  The homeowner, who bought the decking material from a distributor or retailer, argued that privity was created by a written warranty that Trex Co. issued to each individual purchaser of its product. *Id.*  In ruling on Trex Co.'s motion for judgment on the pleadings, the court found that, absent a direct buyer–seller relationship between the parties, a claim for breach of implied warranty would fail as a matter of law. *Id.* at *2 (citing *Brown Sprinkler Corp.*, 265 S.W.3d at 240).  The court dismissed the claim because the homeowner and Trex Co. were not in a buyer–seller relationship. *Id.*

In the case at bar, Plaintiff did not purchase the Cruze from GM; rather, the sale and purchase was negotiated through Bachman Chevrolet, a car dealership. Although GM issued the Warranty to Plaintiff upon his purchase of the Cruze, the First Amended Complaint does not allege that Plaintiff and GM were otherwise in a buyer–seller relationship. Further, Plaintiff appears to concede that he and GM were not in a buyer–seller relationship, as he does not address GM's privity argument with respect to Count III. Accordingly, the court finds that Plaintiff failed to establish the existence of a direct buyer–seller relationship between Plaintiff and GM. As such, we will grant GM's motion to dismiss the claim for breach of the implied warranty of merchantability. GM also contends that Plaintiff failed to plead that the Cruze was unmerchantable at the time of its original sale or delivery. As the court has already determined that Count III fails on other grounds, we will not address this alternative ground for dismissal.

### D. Count IV: Breach of Express Warranty

In Count IV of the First Amended Complaint, Plaintiff states two theories of breach of express warranty based on (1) statements GM allegedly made in its marketing and advertising materials that the Cruze was "of high quality, and at a minimum would actually work, properly, [and] safely," and (2) representations made in both the Warranty issued by GM and promotional materials that stated that the Cruze would be free from defect. (DN 15, ¶ 79). Plaintiff believes that GM breached these express warranties when it sold Cruzes with the alleged defect, "which affected the reliability of the entire engine and the safety of the passenger compartment and caused an antifreeze smell to emanate." (*Id.* ¶ 80). According to Plaintiff, both he and the proposed class have been damaged as a result of this alleged breach because the Cruzes "were and are worth far less than what the Plaintiff and the proposed Class paid to purchase them, which was reasonably foreseeable to [GM]." (*Id.* ¶ 81).

Under Kentucky law, an express warranty is created where: (1) a seller makes an affirmation of fact or promise to the buyer; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties. KRS § 355.2–313(1)(a). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 355.2–313(1)(b). However, "language creating an express warranty need not contain special phrases or formal words[.]" *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982).

Not all statements made by sellers create express warranties. "A seller may puff his wares and state his opinion on their value without creating an express warranty." *Id.* (citing KRS § 355.2–313(2)). Thus, the trier of fact must make a case-by-case determination as to "whether the circumstances necessary to create an express warranty are present[.]" *Id.* (citations omitted). To determine whether a seller's statement is merely puffery or an express warranty, a court must engage in "a fact intensive analysis that depends on the 'particular circumstances in which the language is used and read.'" *Mogan v. Cabela's, Inc.*, 788 F. Supp. 2d 552, 556 (E.D. Ky. 2011) (quoting *Overstreet*, 669 F.2d at 1290). The court should consider "whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." *Overstreet*, 669 F.2d at 1290–91 (quoting *Wedding v. Duncan*, 220 S.W.2d 564, 567 (Ky. 1949)). "Thus, whether an express warranty was created is generally a question for the trier of fact." *Morgan*, 788 F. Supp. 2d at 556 (citing *Moore v. Mack Trucks, Inc.*, 40 S.W.3d 888, 891 (Ky. Ct. App. 2001)).

**1. Statements that the Cruze was of high quality, safe, and reliable**

We will first address whether GM made express warranties in its marketing materials and advertisements that the Cruze was of high quality, safe, and reliable. GM first argues that this claim must fail because Plaintiff does not identify any specific affirmations of fact or promises that GM made. In this respect, GM contends that the complaint contains vague allegations about statements from GM's marketing and advertising materials that describe the Cruze as being "safe," "reliable," and essentially "more for your money." In essence, GM asserts that these statements were mere sales talk, or puffing. According to GM, courts generally do not find that puffing constitutes an affirmation of fact or promise sufficient to create an express warranty.

The Sixth Circuit addressed this specific issue in *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286 (6th Cir. 1982). In that case, the Sixth Circuit interpreted Kentucky's express warranty statute, KRS § 355.2–313. The court noted that not all statements made by sellers create an express warranty, and that the trier of fact must make a case-by-case determination as to whether the circumstances indicate that an express warranty was, in fact, created. *Id.* at 1290 (citations omitted). It further held that under certain circumstances, statements in an advertisement or catalog description could create an express warranty. *Id.* (citations omitted). However, buyers are not charged with a duty to investigate a seller's representations and may accept those representations "at face value." *Id.* at 1291 (citations omitted).

In this instance, the court is convinced that the statements in GM's marketing and advertising materials do not create express warranties. These general statements regarding the vehicle's quality, safety, and reliability are mere opinions, used to promote sales. We regard these statements as mere puffing, insufficient to create an express warranty. The words do not refer to any specific factual attributes of the Cruze of which a buyer might be ignorant. In

reality, any manufacturer would say that its product is of high quality, safe, and reliable. These are the hallmarks of a sales pitch and nothing more.

### 2. Statements that the Cruze would be free from defect

We next consider whether GM made express warranties in the Warranty or in its marketing and advertising materials that the Cruze would be free from defect. GM argues that the First Amended Complaint is bare of allegations regarding the details of any alleged representations about the lack of defects. GM further maintains that the terms of the written Warranty contradict Plaintiff's allegations regarding these alleged representations.

As an initial matter, we note that GM attached the Warranty as an exhibit to its Motion to Dismiss. We can consider the Warranty in ruling on GM's motion without converting the motion to one for summary judgment because Plaintiff referred to the Warranty in the First Amended Complaint as a central element of his claim. *See Greenberg*, 177 F.3d at 514.

Contrary to Plaintiff's assertions, GM does not guarantee or promise in its Warranty that the vehicle will be free from defect; rather, GM provides a limited repair remedy. In the Warranty, GM promises that it will repair defects that arise during the relevant warranty period. The Warranty specifically acknowledges that "[d]effects in the mechanical, electrical, sheet metal, paint, trim, and other components of your vehicle may occur at the factory or while it is being transported to the dealer facility." (DN 20-5, p. 27). The Warranty also states that "[a]ny defects still present at the time the vehicle is delivered to you are covered by the warranty." (*Id.*). GM argues that it would be counterintuitive to warrant that its vehicles are free from defect when the Warranty, by its terms, "covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period." (*Id.* at 10). Finally, GM

maintains that Plaintiff's sole remedy under the Warranty was repair of the alleged defect but, because Plaintiff traded in the Cruze, he has extinguished his remedy under the Warranty.

A district court in the Eastern District of Michigan addressed a similar breach of express warranty claim brought against Kia Motors America, based on warranties contained in a warranty manual. *Williams v. Kia Motors Am., Inc.*, 2005 WL 2649152 (E.D. Mich. Oct. 14, 2005). As with GM's Warranty, the warranty provided by Kia stated that the vehicle would be "free from defects in material or workmanship subject to specified terms and conditions." *Id.* at *5. The district court rejected the plaintiff's argument that Kia breached an express warranty that the vehicle would be free from defect. *Id.* In that regard, the court held that Kia's "repair or replace warranty does not promise that Plaintiff would never have a vehicle problem. It merely promises the repair or replacement of defects in materials or workmanship." *Id.*

Similarly, we are unable to conclude that GM warranted that the vehicle would be free from defect. Even if we assume that GM's marketing and advertisement materials contained statements that the vehicle was free from defect, Plaintiff could not reasonably rely on these representations because the Warranty itself acknowledges that defects may be present from the time the vehicle leaves GM's factory. As such, Plaintiff cannot maintain a claim for breach of an express warranty that the vehicle would be free from defect. Thus, we must grant GM's motion to dismiss Count IV.

### E. Count V: Violation of Magnuson–Moss Warranty Act

In Count V, Plaintiff claims that GM violated the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. ("MMWA"). The MMWA provides that a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty . . . , may bring suit for damages and other legal and

equitable relief." 15 U.S.C. § 2310(d)(1).  To state a claim under the MMWA, a plaintiff must demonstrate that: "(i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Temple v. Fleetwood Enter., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005) (citations omitted).

GM seeks to dismiss this claim on several grounds: (1) Plaintiff's claims under the MMWA are derivative of, and dependent on, his state law claims for breach of express or implied warranty, and to the extent that the state law warranty claims fail, so too must the MMWA claim also fail; (2) Plaintiff did not provide GM with an opportunity to cure the alleged defect before filing suit against GM; and (3) Plaintiff lacks standing to bring this claim.

### 1. MMWA claim is derivative of Plaintiff's state law warranty claims

We first address GM's argument that Plaintiff may not maintain an action under the MMWA because his state law warranty claims are not viable.  Courts in the Sixth Circuit seem to recognize that plaintiffs may not maintain causes of action for violation of the MMWA if their state law breach of warranty claims would fail as a matter of law.  *See Temple*, 133 F. App'x at 268 (citations omitted) ("Ultimately, the applicability of the Magnuson–Moss Act is directly dependant [*sic*] upon a sustainable claim for breach of warranty. . . . Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson–Moss Act."); *Peacock v. Damon Corp.*, 458 F. Supp. 2d 411, 417 (W.D. Ky. 2006) (noting that "to a great extent [the MMWA's] substantive elements mirror those required for state law warranty claims"); *Levin v. Trex Co.*, 2012 WL 7832713, *4 (W.D. Ky. Mar. 5, 2012) (declining to dismiss the plaintiff's MMWA claim because the plaintiff had a viable claim for breach of express warranty under Kentucky law).  Although we have found that Plaintiff's claim for breach of implied warranty

fails as a matter of law, we have nonetheless determined that Plaintiff has sufficiently pleaded a claim for breach of an express warranty that the Cruze would be of high quality, safe, and reliable. To the extent that Plaintiff can state a claim for breach of express warranty under Kentucky law, GM's argument on this first ground must fail.

### 2. Opportunity to cure

GM next argues that Plaintiff's MMWA claim should be dismissed because Plaintiff failed to provide GM with an opportunity to cure the alleged defect before filing suit against GM. In this regard, GM contends that the MMWA, § 2310(e), requires that a buyer give a defendant a reasonable opportunity to cure an alleged defect prior to initiating legal action for breach of warranty. Section 2310(e) provides that

> No action . . . may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action . . . for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.

15 U.S.C. § 2310(e).

It is undisputed that on several occasions Plaintiff took the vehicle to Bachman Chevrolet for repair of the alleged defect. However, Plaintiff did not provide this same repair opportunity to GM. The question then arises as to "whether the terms of the warranty required Plaintiffs to provide [GM] its own opportunity to cure, over and above any opportunities the car owners had given the dealership to cure the defect prior to filing suit." *Lewis v. Mercedes–Benz USA, LLC*, 2004 WL 3756384, *3 (N.D. Ga. Sept. 13, 2004).

In interpreting the MMWA's opportunity to cure requirement, 15 U.S.C. § 2310(e), one court has held that

> [P]laintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs. . . . Once a court makes this determination, but before the class action can proceed, the defendant must be afforded an opportunity to cure the alleged breach of warranty and the named plaintiffs must at that point inform the defendant that they are acting on behalf of a class.

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012) (citing 15 U.S.C. § 2310(e)).  The U.S. District Court for the Southern District of Ohio reasoned that this was the only rational way to interpret Section 2310(e)'s language.  *Id.* at 825 ("If a class action may not be brought unless a defendant first is afforded an opportunity to cure the alleged breach, then the phrase 'a class of consumer may not proceed in a class action' would not make sense.  There would be nothing to proceed with because no case would have been brought.").  It also distinguished the holdings of other courts that had interpreted Section 2310(e), noting that they failed to acknowledge the language "that removes class actions from the requirement that 'no action . . . may be brought' until the defendant is afforded an opportunity to cure."  *Id.* (citations omitted).

We find this interpretation of Section 2310(e) persuasive and similarly hold that Plaintiff is not required to provide GM the opportunity to cure the alleged defect until his representative capacity is established by this court.  We have not yet determined whether Plaintiff can represent the putative class.  However, it is not possible for Plaintiff to provide GM with an opportunity to cure the alleged defect because Plaintiff has traded in the Cruze for a new GM vehicle.  Because Plaintiff did not satisfy this precondition to bringing suit under the MMWA, we must grant GM's motion to dismiss the MMWA claim.

### F. Count VI: Breach of Contract / Common Law Warranty

In Count VI, Plaintiff attempts to bring state law claims for breach of contract and warranty in the alternative, and only if the court finds that GM's "repair or adjustment commitment is deemed not to be a warranty" under the Kentucky Uniform Commercial Code. (DN 15, ¶ 96). Plaintiff specifically alleges that GM limited the remedies available under the Warranty to repairs and adjustments to correct the alleged defect, and that GM breached this contract or warranty obligation when it provided the Cruze with the alleged defect and failed to repair the defect. (*Id.* ¶¶ 97–98). GM seeks to dismiss this count on the following grounds: (1) Plaintiff cannot avoid the Warranty's limitation of remedies by alleging that he demanded rescission from GM because Plaintiff is not entitled to rescind his acceptance of the vehicle; and (2) Plaintiff lacks standing to bring state law claims for breach of warranty because he did not suffer an economic injury.

We will first address GM's argument regarding Plaintiff's ability to rescind acceptance of the vehicle. The Kentucky Court of Appeals has held that "[w]hen the *selling dealer* fails within a reasonable time to correct a defect which substantially impairs the value of a new motor vehicle, the buyer is entitled to revoke his acceptance of the vehicle." *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 484 (Ky. Ct. App. 1978) (citations omitted) (emphasis added). In the case at bar, it is undisputed that Bachman Chevrolet sold the vehicle to Plaintiff. Thus, it appears that under Kentucky law, Plaintiff cannot demand rescission from GM because GM was not the "selling dealer" of the vehicle. Therefore, Plaintiff's claim for breach of contract and common law warranty must fail because Plaintiff's sole remedy under the Warranty is repair and replacement of any defective parts. Plaintiff can no longer take advantage of this remedy because he traded in the vehicle. Moreover, Plaintiff has not countered GM's assertion that it

offered to repair the alleged defect at no cost to Plaintiff.  For these reasons, Count VI must fail

as a matter of law.  We need not consider GM's alternative argument for dismissal of this count.[4]

### G.  Count VII: Fraudulent Concealment

Plaintiff asserts a claim for fraudulent concealment or, as this cause of action is more

commonly called in Kentucky, fraud by omission.  To maintain an action for fraud by omission,

a plaintiff must show the following: "(1) that the defendant had a duty to disclose a material fact,

(2) that it failed to disclose the fact in question, (3) that its failure to disclose induced the plaintiff

to act, and (4) that the plaintiff suffered actual damages."  *Morris Aviation, LLC v. Diamond*

*Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 697–98 (W.D. Ky. 2010).  "A claim for fraud by

omission is grounded in a duty to disclose," and "[m]ere silence is not fraudulent" when no such

duty arises.  *Buridi v. Branch Banking & Trust Co.*, 2013 WL 1309763, *4 (W.D. Ky. Mar. 25,

2013) (internal marks and citations omitted).  In addition, the plaintiff's reliance must be

reasonable.  *Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 710

(W.D. Ky. 2010) (citing *Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1109 (Ky.

1931); *Cincinnati Ins. Co. v. Hofmeister*, 2008 WL 4601140 (Ky. Ct. App. Oct. 17, 2008)).

The issue in this action is whether GM had a duty to disclose the alleged defect.  In

Kentucky, "[t]he existence of a duty to disclose is a question of law for the court."  *Buridi*, 2013

WL 1309763, at *4 (citing *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747–

48 (Ky. 2011)).  A duty to disclose arises under Kentucky law in four circumstances: "(1) where

there is a confidential or fiduciary relationship between the parties; (2) where the duty is

---

[4]  We do note, however, that Count VI may also fail on displacement grounds.  *See Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co.*, 864 F. Supp. 643, 647 (W.D. Ky. 1994) ("The enactment of the U.C.C. in Kentucky was a clear expression of legislative intent to occupy the field of commercial transactions."); 1 LAW OF PROD. WARRANTIES § 1:14 ("[T]he comprehensive set of rules found in Article 2 of the U.C.C. should be considered to displace common law warranty causes of action with respect to the sale of goods. . . . A court should strike common law claims on the ground that this field is occupied by the statute.").

provided by statute; (3) where a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure; and (4) where one party to a contract has superior knowledge and is relied upon to disclose the same." *Id.* (citing *Giddings*, 348 S.W.3d at 747–48). GM maintains that it did not owe Plaintiff a duty of disclosure under any of these enumerated circumstances because it was not in privity of contract with Plaintiff. Alternatively, GM argues that Plaintiff did not plead his fraud claim with particularity, as required by Rule 9(b).

### 1. Privity of contract

We first address GM's contention that it had no duty to disclose the alleged defect because it was not in privity of contract with Plaintiff. The parties seem to agree that any purported duty to disclose the alleged defect arose from GM's partial disclosure. In the First Amended Complaint, Plaintiff alleges that although GM "affirmatively represented" that the Cruze was free of "significant defects and would perform and operate properly," GM intentionally concealed the existence of the alleged defect. (DN 15, ¶¶ 100–101). In evaluating this duty, the Sixth Circuit has held that "[u]nlike the 'superior knowledge' duty, it appears likely the Kentucky courts would recognize a 'partial disclosure' duty regardless of contractual privity." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568–69 (6th Cir. 2013) ("Because partial disclosures are so similar to affirmative fraud, privity should not be required[.]"). "A non-contractual party does not have the duty to say anything, but once a partial disclosure is made he must 'tell the whole truth.'" *Id.* at 569 (citing *Dennis v. Thomson*, 43 S.W.2d 18, 23 (1931)).

Even if the defendant has partially disclosed a material fact to the plaintiff, a duty to disclose will only arise if the defendant's statements "create[ ] the impression of full disclosure." *Id.* (quoting *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct.

App. 2003)). The Sixth Circuit addressed this issue in *Morris Aviation*, 536 F. App'x at 558. In that case, an airplane manufacturer was sued by a company that had purchased airplanes from the defendant's authorized distributor. *Id.* at 560. The planes were outfitted with engines manufactured and warrantied by a German company. *Id.* During the sales negotiations, the defendant and its agents "emphasized the 'quality and reliability'" of the German–manufactured engines. *Id.* In the weeks following the sale, the German engine manufacturer fell into insolvency and its warranties relating to the engine were declared void. *Id.* The plaintiffs sued the airplane manufacturer for, *inter alia*, fraud by omission, arguing that the defendant airplane manufacturer had fraudulently concealed the German engine manufacturer's financial condition. *Id.* In response, the defendant argued that the plaintiffs failed to allege that it owed any duty to disclose this information. *Id.* at 568. The Sixth Circuit upheld the district court's dismissal of the claim because it found that the defendant's partial disclosure relating to the engine's quality did not create the impression of full disclosure. *Id.* at 569. The court reasoned that "[a]n inference of financial stability does not necessarily follow from making statements about the operational terms of a contract." *Id.*

In the present action, Plaintiff argues that because GM described the Cruze as safe and reliable, it was required to fully disclose the alleged defect because the defect made the Cruze unreliable. Unlike in *Morris Aviation*, GM's alleged statements regarding the Cruze's safety and reliability plausibly create the inference that the Cruze is free from significant defects. Moreover, Plaintiff alleges that he materially relied on these statements in making his decision to purchase the Cruze, and the court can infer that a reasonable person contemplating the purchase of the Cruze would want to know that the Cruze was free from defects. *See Mercy Health Partners–Lourdes, Inc. v. Hastings*, 2006 WL 1867453, *4 (W.D. Ky. June 29, 2006) ("[A]

material fact is that which is likely to affect the conduct of a reasonable person in a particular situation and which induces that person to enter into a contract because he/she does not have knowledge of such fact.").  Also, this is not a situation in which the alleged partial disclosure is from an entity other than GM.  As Plaintiff alleges in his complaint, GM, "directly and through its agents," affirmatively misrepresented in its advertisements and other statements that the Cruze was free of significant defects.  (DN 15, ¶ 101).  As such, GM's argument regarding privity must fail because Plaintiff has sufficiently claimed that GM had a duty to disclose the alleged defect.

### 2.  Rule 9(b)'s particularity requirement

GM next argues that the claim for fraudulent concealment must fail because it does not satisfy Rule 9(b).  A claim for fraudulent concealment under Kentucky law is subject to Rule 9(b)'s heightened pleading standards.  *Morris Aviation*, 536 F. App'x at 562 (citing *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247–48 (6th Cir. 2012)).  Under this rule, "a party alleging fraud 'must state with particularity the circumstances constituting fraud[.]" *Id.* (quoting Fed. R. Civ. P. 9(b)).  A plaintiff is required: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent."  *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (citing *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009)).

In this instance, Plaintiff alleges the following: (1) GM intentionally concealed the alleged defect, or acted with reckless disregard for the truth (DN 15, ¶ 100); (2) GM had a duty to disclose the alleged defect (*id.* ¶ 104); (3) GM, directly and through its agents, affirmatively

misrepresented through its advertising and marketing materials that the Cruzes had no significant defects, but GM knew or should have known that these representations were false (*id.* ¶¶ 101– 102); and (4) as a result of these representations, Plaintiff was induced to purchase the Cruze (*id.* ¶¶ 105–108).  Although these allegations are quite broad, they arguably satisfy the specificity requirements of Rule 9(b).

However, GM further contends that representations regarding a product's "reliability" and "quality" are not statements of fact that would support a fraud claim.  Indeed, the Sixth Circuit has held that "[g]eneralized, subjective terms like 'quality' and 'reliability' are plainly self-serving opinions, puffery on which no buyer would reasonably rely," and therefore cannot form the basis of a fraud claim.  *Morris Aviation*, 536 F. App'x at 563 (citations omitted).  The Sixth Circuit made this statement in the context of a claim for fraudulent misrepresentation, which is a cause of action that requires that the misrepresentation relate to a past or present material fact.  *Id.* at 562 (quotation omitted).  Similarly, a party bringing a claim for fraudulent concealment must show that the allegedly fraudulent statement relates to a material fact.  *See id.* at 568 (citations and quotations omitted).  As such, Plaintiff's claim for fraudulent concealment fails to satisfy Rule 9(b)'s particularity requirement, as it is based on GM's alleged representations regarding the Cruze's "reliability" and "quality."  Therefore, we will grant GM's motion to dismiss the fraudulent concealment claim.

### H.  Count VII[5]: Unjust Enrichment

Under Kentucky law, a party will prevail under a theory of unjust enrichment if he or she proves the following elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without

---

[5] This claim is also denominated "Count VII."  Because it is incorrectly numbered, the court will refer to this count by name.

payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) (citing *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380–81 (W.D. Ky. 1987)). In the First Amended Complaint, Plaintiff alleges that he paid GM for a non-defective and fully-operative vehicle and, in return, received a defective vehicle that required substantial and invasive repairs. (DN 15, ¶¶ 111–113). Plaintiff further alleges that he conferred this benefit on GM, that GM knowingly retained the benefit, and that it would be unjust for the court to allow GM to retain the benefit. (*Id.* ¶ 114).

GM first argues that Plaintiff cannot recover on the basis of unjust enrichment because an express agreement governs the subject matter of the parties' dispute. The court has previously addressed a similar argument in a putative class action brought against a hair product manufacturer and its distributors to recover damages for the product's alleged defects. *See Naiser v. Unilever U.S., Inc.*, — F. Supp. 2d —, 2013 WL 5460870 (W.D. Ky. Sept. 30, 2013). In *Naiser*, the defendant manufacturer and distributors argued that the plaintiffs' unjust enrichment claim should be dismissed because it was based on the same conduct as was alleged in their express warranty claim. *Id.* at *19. The court recognized that "[u]nder Kentucky law, unjust enrichment 'has no application in a situation where there is an explicit contract which has been performed.'" *Id.* (citations omitted). However, the court noted that plaintiffs may plead alternative claims pursuant to Federal Rule of Civil Procedure 8(d)(2), and that "[c]ase law suggests that Plaintiffs may allege both a breach of warranty claim and an unjust enrichment claim in their complaint." *Id.* (citing *Holley Performance Prods., Inc. v. Keystone Auto. Operations*, 2009 WL 3613735, *6 (W.D. Ky. Oct. 26, 2009); *In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litig.*, 155 F. Supp. 2d 1069, 1116 (S.D. Ind. 2001)).

As does GM in this case, the defendant in *Naiser* also cited to *Shane v. Bunzl Distrib.*

*USA, Inc.*, 200 F. App'x 397 (6th Cir. 2006) to support its argument to dismiss the unjust

enrichment claim.  However, the *Naiser* court distinguished *Shane*, noting that

> [In *Shane*], the court affirmed a district court's dismissal of an unjust
> enrichment claim because "[t]he facts alleged in Shane's unjust-enrichment
> claim mirror[ed] those alleged in his breach-of-contract claim."  *Id.* at 404.
> However, in that case, the court had already determined that there was explicit
> contract between the parties, thus negating the plaintiff's ability to have a
> successful claim for equitable relief.  *See id.*  Here, by contrast, the Court has
> not yet determined whether there was a valid and enforceable contract between
> Unilever and Plaintiffs.  Further, the Court need not make such a determination
> at this juncture.  Instead, the Court's duty is simply to determine whether
> Plaintiffs' claims are sufficiently pleaded.  "A party may state as many
> separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ.
> P. 8(d)(3).  Thus, the Court finds that Plaintiffs are permitted to allege their
> breach of warranty and unjust enrichment claims.

*Naiser*, 2013 WL 5460870, at *19 (alterations in original).

In the instant action, the parties do not appear to dispute that the written Warranty is an

explicit contract that governs their relationship.  Accordingly, this action is more similar to

*Shane*, in that there is an enforceable and explicit contract between the parties.  Because the

parties do not dispute the existence of this contract, Plaintiff is not permitted to plead claim

breach of express warranty claims and unjust enrichment in the alternative.  Moreover, Plaintiff

acknowledges in the First Amended Complaint that he purchased the Cruze from Bachman

Chevrolet.  Therefore, the court is not convinced that Plaintiff could satisfy a central element of

his claim for unjust enrichment, namely, that GM derived a specific benefit from the sale of this

specific Cruze to Plaintiff by Bachman Chevrolet.  Therefore, we will grant GM's motion to

dismiss the unjust enrichment claim.

## I.  Count VIII: Declaratory Judgment

In the First Amended Complaint, Plaintiff seeks the following declarations pursuant to KRS § 418.040: (1) that the Cruzes subject to this lawsuit contain an antifreeze leakage defect; (2) that GM be enjoined from employing unfair and/or deceptive trade practices in its future business dealings with consumers; and (3) that GM be enjoined from receiving payment for a Cruze above and beyond the value of a Cruze with an antifreeze leakage defect.  (DN 15, ¶ 120). GM contends that this count should be dismissed because Plaintiff improperly seeks declaratory relief under Kentucky's declaratory judgment statute, KRS § 418.040.[6]

Courts in this district have recognized that "declaratory judgment acts are procedural rules."  *Horace Mann Ins. Co. v. Alberts*, 2007 WL 3025071, *2 n.1 (W.D. Ky. Oct. 15, 2007) (quoting *Nationwide Mut. Fire Ins. Co. v. Creech*, 431 F. Supp. 2d 710, 712 n. 1 (E.D. Ky. 2006)).  Under the *Erie* doctrine, a federal court must apply "federal law governing discretion in entertaining declaratory judgment actions even though the action was originally brought under a state declaratory judgment statute and removed to federal court based on diversity[.]"  *Bland v. Southline Steel Indus., Inc.*, 2008 WL 5274880, *2 n.1 (W.D. Ky. Dec. 16, 2008) (quoting *WBS Connect, LLC v. One Step Consulting, Inc.*, 2007 WL 4268971, *8 n.5 (D. Colo. Nov. 30, 2007)).  However, "the discretion conferred by the Declaratory Judgment Act is operable even where declaratory relief is requested pursuant to state law."  *Brooks v. Lehman Bros. Bank*, 2012 WL 488102, *3 (N.D. Ohio Feb. 14, 2012) (citing *Golden Eagle Ins. Co. v. Travelers Cos.*, 103

---

[6]  KRS § 418.040 provides that

In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

KRS § 418.040.

F.3d 750, 753 (9th Cir. 1996)).  These principles likely apply in this action, even though it was

originally filed in this court and not removed based on diversity of citizenship grounds.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, the "[e]xercise of jurisdiction . . .

is not mandatory."  *Bituminous Cas. Corp. v. J & L Lumber Co. Inc.*, 373 F.3d 807, 812 (6th Cir.

2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)).  A court is directed to

"consider[ ] five factors to determine whether a case is appropriate for declaratory judgment[.]"

*Id.* at 813.  These factors include: "(1) whether the judgment would settle the controversy; (2)

whether the declaratory judgment action would serve a useful purpose in clarifying the legal

relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of

'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a

declaratory action would increase the friction between our federal and state courts and

improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is

better or more effective."  *Id.* (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th

Cir. 2000)).

GM asks the court to dismiss Plaintiff's claim for declaratory relief.  It argues that

Plaintiff failed to allege any useful purpose that would be served by a declaratory judgment

because any issues that could be the subject of declaratory relief are subsumed by Plaintiff's

other claims.  We agree.  The declarations that Plaintiff seeks cannot be made before there is a

finding of liability on his claims.  If and when the court makes a finding of liability, it would not

"serve a useful purpose in clarifying the legal relations at issue."  *Bituminous Cas. Corp.*, 373

F.3d at 812 (quotation omitted).  In addition, Plaintiff appears to be using the declaratory remedy

"merely for the purpose of 'procedural fencing,'" in that the claims on which Plaintiff seeks

declaratory relief are the same as his claims in chief. *See id.* Therefore, the court will decline to exercise its jurisdiction to grant Plaintiff's requested declaratory relief.

### J. Count IX: Unconscionability

In Count IX, Plaintiff argues that GM's "policies and practices related to the merchandising and sale of the Chevrolet Cruze are substantively and procedurally unconscionable," in that GM allegedly sells Cruzes that contain defects and unfairly misrepresents that the Cruzes are free from defect. (DN 15, ¶ 122). GM argues that this claim must be dismissed because Kentucky courts do not recognize an independent cause of action for damages based on allegations of unconscionability. In the alternative, GM contends that Plaintiff has failed to allege facts that show that the Warranty is unconscionable and, thus, unenforceable. Plaintiff's response is silent as to this count.

Kentucky defines "[a]n unconscionable contract [as] a contract 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" *Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1074 (6th Cir. 1997) (quoting *Louisville Bear Safety Serv., Inc. v. South Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)). "The doctrine of unconscionability is only used in rare instances, such as when a party abuses its right to contract freely," and it "forbids only one-sided, oppressive, and unfairly surprising contracts, and not mere bad bargains." *Id.* (citations omitted). The court is loath to apply the doctrine in this instance. Plaintiff has not alleged facts which tend to show that a fair and honest person would not accept the terms of GM's Warranty. *See Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (finding that a three-year/36,000 mile vehicle warranty is not unconscionable). Moreover, Plaintiff has not presented the court with

any alternative arguments as to why this claim should proceed.  Therefore, we will grant GM's motion to dismiss the unconscionability claim.

## V.     CONCLUSION

For the reasons set forth herein, GM's motion to dismiss (DN 20) will be granted as to all counts.  A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing this action with prejudice.

March 31, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**